## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDELL BRADFORD JENKINS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. DAVID W. ALLEN, et al. | : | NO.  18-233 |
| Defendants. | : | |

## MEMORANDUM

**STENGEL, C.J.**                                                **February 1, 2018**

Plaintiff Wendell Bradford Jenkins brings this civil action against eighteen (18) defendants, the vast majority of whom appear to be doctors or other medical professionals, based primarily on a 2005 incident when he almost died because of a medication he had been prescribed.  Mr. Jenkins seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Mr. Jenkins leave to proceed *in forma pauperis* and dismiss the Complaint without prejudice to Mr. Jenkins refiling his claims in state court.

## I.        FACTS[1]

According to the Complaint, Mr. Jenkins initiated this civil action based on events that occurred on May 19, 2005, in the emergency room at St. Joseph's Hospital in Reading, Pennsylvania.  The Complaint does not recite a factual basis for Mr. Jenkins's claims, but instead refers to "attached paper work."  (Compl. at 3.)  Reading Mr. Jenkins's Complaint and exhibits as a whole, the Court understands him to be pursuing medical malpractice claims based on his belief that his prescription of propoxy, and/or other pain pills, caused him to black out in the emergency room in 2005 and sustain brain damage.

---

[1] The facts are taken from the Complaint and exhibits attached to the Complaint.

An attachment to the Complaint addressed "to whom it may concern" alleges that Mr. Jenkins visited the emergency room at St. Joseph's Hospital, informed the receptionist that he was experiencing a migraine headache, and was asked "why did you come here?" Mr. Jenkins alleges that he passed out "into a comatose state" and that his family was not notified. (*Id.* at 11.)

The remainder of this attachment discusses Mr. Jenkins's visits with various doctors that took place between 2004 and 2006. On June 23, 2005, Mr. Jenkins had an appointment with Dr. Klonel. Dr. Klonel informed Mr. Jenkins that the pills he prescribed were too strong, and that Dr. Klonel would not be seeing him anymore. Mr. Jenkins was referred to Dr. Nice, who met with him on October 25, 2005 and stated there was nothing she could do for him. Mr. Jenkins met with Dr. Wong on January 11, 2006; Dr. Wong stated that he was scared to prescribe medication to Mr. Jenkins because he did not know which medication put him into a comatose state. Mr. Jenkins also notes that he had a visit with Dr. Klonel in 2004 about his prescription and indicates that the doctor asked him to do something illegal. In January of 2006, Mr. Jenkins saw Dr. Allen, who referred him for a cat scan in February. He saw Dr. Wong again in April of 2006 and was subsequently referred to Dr. Nicodemus.

In October of 2006, Mr. Jenkins began visiting malpractice attorneys to investigate the possibility of bringing a lawsuit. Additional attachments reflect that Mr. Jenkins filed complaints with government agencies, and that he met with government officials in October of 2006, including the Mayor of Reading at the time, Tom McMahon, in an effort to build a medical negligence case based on the prescription he was given. The exhibits also reflect that Mr. Jenkins had been prescribed pain pills by his doctors, that he underwent various medical procedures, including dental work and physical therapy, since 2004, and that he believes he

almost died because he was prescribed the wrong medication.  Mr. Jenkins seeks "a lawyer to resolve the problems that [he is] having in life" and $10 million.  (Compl. at 36.)

## II.  STANDARD OF REVIEW

Mr. Jenkins is granted leave to proceed *in forma pauperis* because it appears that he is unable to pay the costs of filing suit.  As Mr. Jenkins is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  As Mr. Jenkins is proceeding *pro se*, the Court must construe his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).  Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

## III.  DISCUSSION

The Court will dismiss this case for lack of subject matter jurisdiction.  There is no basis for federal jurisdiction over this case under 28 U.S.C. § 1331, because nothing in the Complaint and exhibits suggests a basis for a federal claim here.[2]  *See Rose v. Husenaj*, No. 17-1621, 2017 WL

---

[2] If Mr. Jenkins was trying to bring claims against any government officials for failing to investigate his malpractice claims or bring criminal charges, he has no legal basis for doing so. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").

3776226, at *2 (3d Cir. Aug. 31, 2017) (concluding that plaintiff failed to invoke the District Court's federal question jurisdiction when there was no substantial basis for his federal claims (quoting *Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015))). Even liberally construing the Complaint, the only logical basis for a lawsuit would be Mr. Jenkins's allegations of malpractice against his doctors, which could give rise to claims under state law.

The only basis for this Court's subject matter jurisdiction over malpractice claims arising under state law is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity jurisdiction requires "complete diversity," which in turn requires that "no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). As the Complaint reflects that the parties in this case are not completely diverse, the Court cannot exercise jurisdiction under § 1332. If Mr. Jenkins seeks to pursue those claims, he must proceed in state court.

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Mr. Jenkins's Complaint without prejudice to him refiling his state law claims in state court.[3] Mr. Jenkins will not be given leave to file an amended complaint because he cannot cure the defects noted above. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate order follows

---

[3] The Court expresses no opinion on whether Mr. Jenkins's claims have merit or whether they are timely.